UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | | |
|---|---|---|
| JAMES SMOCK, | ) | |
|         Plaintiff, | ) | |
| vs. | ) | 3:11-cv-00094-RCJ-VPC |
| PEPPERMILL CASINOS, INC., | ) | ORDER |
|         Defendant. | ) | |

This case arises out of a customer's ejection from a casino and his subsequent detention by the casino's guards. Defendant has moved for summary judgment. For the reasons given herein, the Court grants the motion.

I.  FACTS AND PROCEDURAL HISTORY

    A.  The Allegations

On or about March 20, 2010, security guards employed by Defendant Peppermill Casinos, Inc., d.b.a. Rainbow Hotel Casino ("the Rainbow") "attacked, battered and assaulted" Plaintiff James Smock at the Rainbow in Wendover, Nevada. (Compl. ¶¶ 5, 8–9, Dec. 13, 2010, ECF No. 1). Plaintiff sued Defendant in diversity in this Court on six causes of action: (1) Assault; (2) Battery; (3) Intentional Infliction of Emotional Distress ("IIED"); (4) False Imprisonment; (5) Defamation; and (6) Negligence. Defendant has moved for summary judgment.

### B.   The Evidence

On March 19, 2010, Plaintiff met his former girlfriend, Toni Dominguez, at the Circle Inn bar in Sunset, Utah, and they decided to go to Wendover, Nevada together. (Smock Dep. 43–44, June 22, 2011, ECF No. 23-1).[1] On their way to Wendover, they stopped in Stansbury, where Dominguez bought a six-pack of beer, five of which she drank along the way. (*Id.* 47). When they arrived in Wendover, they went directly to the Rainbow, and Plaintiff got a room. (*Id.* 47–48). They got drinks at the bar and went to the roulette table, but the table was too busy, so they began playing slot machines nearby, then roulette and other games. (*Id.* 50). Plaintiff couldn't recall exactly how much he drank that night, but he remembered having a long island iced tea and some beer, and that by the time he was ejected he was "[t]oo intoxicated to be making any rational decisions." (*Id.* 50–53, 71–72).

At approximately 9:00 a.m. on March 20, 2010, Plaintiff and Dominguez went to a coffee shop next to the Rainbow, and when Plaintiff began to express his feelings for Dominguez, she said she didn't want to talk about it and left for the Rainbow. (*Id.* 50, 53–54). Plaintiff followed her into the Rainbow after a few minutes, and after a while Plaintiff told Dominguez he wanted to leave. (*Id.* 54). As Plaintiff was trying to convince Dominguez to leave with him at approximately 1:00 p.m., the security guards told Plaintiff he had to leave. (*Id.*). The guards told him he was trespassing on the property and had to leave, but he still refused to leave. (*Id.* 59). Some of the security guards, one of whom was named Sergio, escorted Plaintiff outside. (*Id.* 68–69).

A pit boss summoned four security guards, including Sergio Banuelos, to the blackjack tables because Plaintiff was bothering Dominguez. (Banuelos Dep. 31–32, June 21, 2011, ECF No. 23-2). The pit boss instructed Banuelos to remove Plaintiff from the casino floor, so

---

[1] Wendover straddles the Nevada–Utah border along Interstate 80.

Banuelos told Plaintiff that he had to leave the casino for twenty-four hours. (*Id.* 33, 36). Plaintiff ignored Banuelos and kept repeating that he wanted to speak with Dominguez. (*Id.* 37). Banuelos tried to convince Plaintiff to leave politely, and though Plaintiff would not relent at first, he followed the guards outside peacefully when Banuelos told him he would be arrested if he did not leave voluntarily. (*See id.* 37–39).

Once outside, Plaintiff convinced another customer to approach Dominguez inside the casino and tell her Plaintiff wanted to talk to her, and the customer relayed to the guards that Plaintiff had asked her to do this and that the woman Plaintiff had identified had denied knowing Plaintiff. (*Id.* 42). Plaintiff then approached the doors again himself, so the guards went outside and told Plaintiff he had to leave the property completely, but he refused, so the guards took him inside to the security office peacefully. (*Id.* 43–44). Plaintiff was upset that he was being trespassed from the property, and he was preoccupied with finding and talking to Dominguez. (*Id.* 44). At the security office, Banuelos took Plaintiff's picture and explained to him that he was being formally trespassed from the Rainbow and all other Peppermill properties indefinitely, and that he would be arrested if he tried to enter any of those properties without regaining permission from the management or human resources departments. (*Id.* 44–47).[2] Banuelos and the other guards then escorted Plaintiff out the east doors of the Rainbow again and told him he had to leave the property completely. (*Id.* 47). Banuelos and the other guards waited at the doors and watched as Plaintiff first walked towards the parking lot but then came back towards the doors. (*Id.* 49). Banuelos told Plaintiff again that he was trespassing and had to leave. (*Id.* 49–50). Plaintiff refused to leave and cursed Banuelos. (*Id.* 50).[3] At this point in the video, Banuelos reaches for Plaintiff in an apparent attempt to seize his wrist, and Plaintiff swipes

---

[2] Defendant provides a video recording of the scene in the security office, with audio.

[3] Defendant provides a video recording of the scene outside, without audio.

1  Banuelos's hands away, then pushes him away, at which point Banuelos charges forward and
2  quickly brings Plaintiff to the ground, after which the other guards assist in handcuffing Plaintiff,
3  picking him up, and siting him on a bench. The guards then await the police, who soon arrive
4  and speak to the parties. Plaintiff walks away on his own. Plaintiff was handcuffed for
5  approximately twenty minutes.

## II. SUMMARY JUDGMENT STANDARDS

A court must grant summary judgment when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those which may affect the outcome of the case. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *See id.* A principal purpose of summary judgment is "to isolate and dispose of factually unsupported claims." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986). In determining summary judgment, a court uses a burden-shifting scheme:

> When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial. In such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case.

*C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (citations and internal quotation marks omitted). In contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *See Celotex Corp.*, 477 U.S. at 323–24. If the moving party fails to meet its initial burden, summary judgment must be denied and the court need not consider the nonmoving party's

1  evidence. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159–60 (1970).

2  If the moving party meets its initial burden, the burden then shifts to the opposing party to establish a genuine issue of material fact. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). To establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 631 (9th Cir. 1987). In other words, the nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations that are unsupported by factual data. *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine issue for trial. *See* Fed. R. Civ. P. 56(e); *Celotex Corp.*, 477 U.S. at 324.

At the summary judgment stage, a court's function is not to weigh the evidence and determine the truth, but to determine whether there is a genuine issue for trial. *See Anderson*, 477 U.S. at 249. The evidence of the nonmovant is "to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255. But if the evidence of the nonmoving party is merely colorable or is not significantly probative, summary judgment may be granted. *See id.* at 249–50.

III. ANALYSIS

A. Assault and Battery

The criminal code defines "battery" as "any willful and unlawful use of force or violence upon the person of another," *see* Nev. Rev. Stat. § 200.481, and the State Bar of Nevada suggests using this language to instruct juries in civil battery cases, *see* State Bar of Nevada, Nev. J.I. - Civil, 6IT.2 (2011). The Nevada Supreme Court does not appear to have expressly adopted a definition of civil battery, so the federal courts have relied on the Restatement. *See, e.g., Switzer v. Rivera*, 174 F. Supp. 2d 1097, 1109 (D. Nev. 2001) (Hunt, J.) (citing Restatement (Second) of

Torts §§ 13, 18 (1965)). Under the Restatement:

> An actor is subject to liability to another for battery if (a) he acts intending to cause a harmful or offensive contact with the person of the other or a third person, or an imminent apprehension of such a contact, and (b) a harmful contact with the person of the other directly or indirectly results.

Restatement (Second) of Torts § 13. Section 18 replaces "a harmful" with "an offensive." In other words, battery requires (1) an intent to cause harmful or offensive contact or the imminent apprehension of harmful or offensive contact (2) that results in harmful or offensive contact. *See* Restatement (Second) of Torts §§ 13, 18. An assault is an incomplete battery; the intent required is the same, but the result need only be the imminent apprehension of harmful or offensive contact. *See id.* § 21(1).

Plaintiff has alleged that he was both assaulted and battered outside the casino when he was detained. The video makes clear that there is a genuine issue of material fact whether the guards assaulted and battered Plaintiff. Plaintiff is seen to flinch when a guard first reaches towards him, and this is sufficient evidence to prevent summary judgment on an assault claim. The video also makes clear that the guards tackled Plaintiff, which is sufficient evidence to prevent summary judgment a battery claim.

In Nevada, certain state actors have discretionary immunity from common law claims. Nev. Rev. Stat. § 41.032. Defendant's employees, however, were not state actors, so Defendant must rely on some other statutory or common law privilege. Defendant notes that its employees, like any citizen, have a statutory privilege to arrest another citizen for a public offense committed or attempted in their presence. *See* Nev. Rev. Stat. § 171.126(1).[4] Defendant argues that the evidence shows there is no genuine issue of material fact that Plaintiff had willfully remained on Defendant's property after having been given a verbal command to quit the

---

[4] If the offense is a felony, a private citizen may arrest the offender even though the offense was not committed in his presence, so long as he has "reasonable cause." *See id.* § 171.126(2)–(3). Defendants only allege misdemeanor trespassing here.

property by the lawful occupants, i.e., the guards, which act constitutes misdemeanor trespassing. *See* Nev. Rev. Stat. § 207.200(1)–(2).[5] Defendant is correct. There is no genuine issue of material fact that the guards verbally ordered Plaintiff to quit the property while in the security office, and that after they escorted him outside, he loitered on the property and refused to leave when confronted again.

Still, the guards were only entitled to use reasonable force. *See State v. Weddell*, 43 P.3d 987, 988 (Nev. 2002) ("[A] private person, when arresting another person pursuant to NRS 171.126, may use no more force than is necessary and reasonable to secure the arrest."). Defensive summary judgment can be granted to a defendant on the issue of reasonable force if, after resolving factual questions in favor of the plaintiff, there is no question that the officer acted objectively reasonably. *Cf. Scott v. Heinrich*, 39 F.3d 912, 915 (9th Cir. 1994) (Fourth Amendment excessive force case). There is no genuine issue of material fact here over whether the guards used reasonable force. As seen in the video, only one guard is involved in the "takedown." That guard first grabs at Plaintiff's arms, and Plaintiff flinches, pushes at the guard, and backs away. The guard then charges Plaintiff, puts his hands around the back of Plaintiff's head, and pushes downward as he moves around Plaintiff's right side, causing Plaintiff to fall prone over the curb. The other guards then handcuff Plaintiff's arms behind his back. The entire altercation takes less than ten seconds, and no guard is seen striking or otherwise abusing Plaintiff. The guards then pull Plaintiff to his feet and have him sit on a bench until the police arrive a few minutes later. Defendants are entitled to summary judgment on the assault and battery claims because of the statutory privilege of reasonable force to effect a citizen's arrest.

**B.     IIED**

Plaintiff has stipulated in his response to dismiss this claim.

---

[5]There is also a common law privilege to use reasonable force to eject a trespasser. *See Walker v. Burkham*, 222 P.2d 205, 220–21 (Nev. 1950).

### C. False Imprisonment

Because Defendants are entitled to summary judgment on the fact of their privilege to arrest Plaintiff, they are entitled to summary judgment on the false imprisonment claim, because the lack of a material question of fact as to probable cause to arrest obviates a false imprisonment claim. *See Plaza v. City of Reno*, 898 P.2d 114, 115 (Nev. 1995).

### D. Defamation

Plaintiff's defamation claim is premised on his allegation that he had not committed any offense and that his arrest and detention constituted a false communication that he had. But Defendant is entitled to summary judgment on the issue of Plaintiff's having committed a trespass—which is clearly the case—and this destroys the basis for the defamation claim.

### E. Negligence

It is not clear which theory Plaintiff means to plead under this cause of action. Plaintiff implies an intent to plead premises liability, but he has not identified any unsafe condition of the property itself and does not claim to have been injured thereby, e.g., by falling into a construction pit or the like. (*See* Compl. ¶ 36). Plaintiff also implies an intent to plead a traditional negligence action, but Plaintiff premises the claim of negligence upon the intentional acts of Defendants' employees, which is a conflation of a negligence theory with an intentional tort theory. (*See id.* ¶ 39). Plaintiff identifies a proper theory of relief, i.e., negligent hiring, training, and supervision, but he does not allege any facts indicating any failures in hiring, training, or supervision. (*See id.* ¶ 37). The negligence claim therefore fails as a matter of law, and any negligence in hiring, training, or supervision would be irrelevant in any case because the guards are not themselves liable on the underlying claims.

///

///

///

## CONCLUSION

IT IS HEREBY ORDERED that the Motion for Summary Judgment (ECF No. 23) is GRANTED.

IT IS SO ORDERED.

Dated this 11th day of May, 2012.

_____
ROBERT C. JONES
United States District Judge